**UNITED STATES of America, Plaintiff,**

v.

**Abdelkrim KADEM, Defendant.**

No. 03–CR–6129L.

United States District Court, W.D. New York.

April 27, 2004.

Toinette Michelle Randolph, U.S. Attorney's Office, Rochester, NY, for Plaintiff.

Mark D. Hosken, Federal Public Defender, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

All pretrial motions in this case were referred to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636. Defendant, Abdelkrim Kadem ("Kadem"), filed motions, including a motion to suppress statements made by him after his arrest to Investigator Nelson Yera, with the Immigration and Customs Enforcement Agency. Kadem made statements on January 15 and March 15, 2002, which he contends should be suppressed because he was not given *Miranda* warnings. Kadem also contends that certain statements he made at his removal hearing before Immigration Judge John Reid should also be suppressed and not used at his pending criminal trial. Magistrate Judge Payson conducted a suppression hearing and Investigator Yera was the only witness.

In a Report and Recommendation filed March 1, 2004, Magistrate Judge Payson recommended that both of Kadem's statements to Investigator Yera that were made before *Miranda* warnings were given should be suppressed, but that Kadem's statements at the removal hearing should not be suppressed.

Both the Government and Kadem have filed objections to Magistrate Judge Payson's Report and Recommendation. The Government objects to Magistrate Judge Payson's recommendation that Kadem's statements on January 15 and March 15, 2002, be suppressed and Kadem objects to the Magistrate Judge's recommendation that his statements at the removal hearing were proper and need not be suppressed.

**Statements to Investigator Yera on January 15 and March 15, 2002**

Magistrate Judge Payson recommended that all statements made by Kadem to Investigator Yera at the Elmira Correctional Facility that were made before *Miranda* warnings were given should be suppressed. I agree that some statements should be suppressed for failure to Mirandize Kadem, but I believe Kadem's initial statements concerning his identity, place and date of birth are not precluded for failure to give the *Miranda* warnings.

When Yera responded to the Elmira Correctional Facility, he did so because he had received a report, generated by the New York State Department of Corrections ("DOCS") entitled "Report of Alien Person Institutionalized." This document was received as Ex. 3 at the suppression hearing before Judge Payson. On the report, it lists the name of the inmate "Giovanni, Marciano", with a date of birth, December 14, 1960 and a birthplace of Rome, Italy. His last address in Brooklyn, New York and his nearest relative were also listed, as well as the crime that brought Kadem into the DOCS system, criminal possession of stolen property in the fourth degree.

■ Yera had arranged with DOCS officials to present the person described on the form as "Giovanni, Marciano" for an interview. This person was placed in an interview room for Yera. For the purposes of this proceeding, I concur with Magistrate Judge Payson and find that Kadem was "in custody" for purposes of *Miranda*. It is true that Yera was there initially, not as part of a criminal investigation but to determine Kadem's alienage. Nevertheless, I think the setting was such that the determination of "in custody" is appropriate: Kadem was serving a sentence, did not voluntarily walk to the interview room, but was transported there, and a reasonable person in his position might well feel he was not free to leave the interview room. *See United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir.1998) (although fact of incarceration is not dispositive with respect to inquiry into whether person being interviewed was "in custody," "[t]hat inquiry must include consideration of the fact of incarceration") (citing *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990)).

■ Kadem's contention, in argument before this court on the objections, is that Yera should have immediately given Kadem *Miranda* warnings before he asked any question whatsoever. I disagree. I think the proof shows that Yera identified himself and made the simple inquiry of the person presented to him as to his name, date and place of birth. There is no evidence that Yera knew the person that had been brought to the interview room and, therefore, it was entirely reasonable and proper for Yera to attempt to ascertain the name of the man before him and to make sure he was the same person that had been identified in the Report of Person Institutionalized. "As a cautionary measure, police usually prudently inquire as to the suspect's name to ensure that the wrong person is not apprehended." *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir.1989).

I find that Yera's purpose there was not to seek incriminating evidence for criminal prosecution but to simply ascertain the name and identity of the person who might

well have issues concerning citizenship. The simple question concerning the person's name, place of birth and date of birth is not the type of question designed to elicit incriminating information. *United States v. Salgado,* 292 F.3d 1169, 1172 (9th Cir.2002) ("Although the interview occurred at the jail, it was solely for the administrative purpose of determining whether Salgado was deportable when he got out of jail. [The agent] had no reason to believe that Salgado's statements would be incriminating").

Although this is not a classic "booking" situation where an officer seeks pedigree information, it is quite similar and the result concerning *Miranda* issues should be the same. Under such circumstances, an officer is generally under no obligation to give *Miranda* warnings prior to obtaining preliminary basic pedigree information. *United States v. Rodriguez,* 356 F.3d 254, 259–60 (2d Cir.2004) (no *Miranda* warning required where agent interviewed defendant at jail, since interview was conducted solely for purpose of determining whether defendant would be subject to administrative deportation after his release from prison on unrelated state charges, and where agent was unaware of potentially incriminatory nature of disclosures he sought from defendant regarding his birthplace and citizenship).

The fact that Kadem allegedly lied and gave a false name and is now charged criminally with that is of no consequence in determining whether *Miranda* warnings should have been given. One who makes false statements or commits perjury does so at his peril and the *Miranda* warnings were not designed to advise those in custody not to lie. *See Carmona,* 873 F.2d at 573. ("If the suspect chooses to give an alias, it may work to his prejudice"). As the court stated in *United States v. Tavares,* No. 01 CR. 1115, 2002 WL 31571662, at *6 (S.D.N.Y. Nov. 18, 2002),

To permit a defendant to suppress the truth by his own prevarications would turn *Miranda* into a dangerous sword to be wielded unfairly by the guilty. It would make the law a foolish mockery of common sense.... Simply because a defendant gives false information in response to pedigree questions, and therefore renders the information incriminating, does not mean that *Miranda* warnings were required.

■ I do have concern though with other questions that Yera raised that do seem to attempt to elicit incriminating information. Questions relating to the manner in which Kadem arrived in this country, whether he had proper documentation in this particular case tend to call for responses that could reasonably be anticipated would be incriminating. Yera knew that the person before him was serving a jail sentence, and he had a report of conviction that indicated he had previously been convicted of an aggravated felony which could have resulted in deportation. Under these circumstances, I believe questions relating to his status suggest that *Miranda* warnings should have been given. Therefore, I agree with Magistrate Judge Payson that any statements relating to these topics which were made prior to the *Miranda* warnings should be suppressed and may not be used in the Government's case in chief. Obviously, under well-established authority, if the defendant elects to testify, these statements may be used for impeachment purposes. *Pollard v. Galaza,* 290 F.3d 1030, 1033 (9th Cir.), *cert. denied,* 537 U.S. 981, 123 S.Ct. 449, 154 L.Ed.2d 343 (2002) ("Although a statement, taken in violation of *Miranda,* may not be used substantively in the prosecution's case-in-chief, such a statement, if voluntary, may be used for impeachment should the Defendant testify inconsistently") (citing *Harris v. New York,* 401 U.S. 222, 224–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)); *accord United States ex rel.*

*Wright v. LaVallee*, 471 F.2d 123, 126–27 (2d Cir.1972), *cert. denied*, 414 U.S. 867, 94 S.Ct. 167, 38 L.Ed.2d 87 (1973).

I make the same ruling concerning the March 15, 2002, statements. The basic pedigree information may properly be elicited in the Government's case in chief, but other matters elicited prior to the *Miranda* warnings may not.

**Statements Made by the Defendant at the Deportation Proceeding Before Immigration Law Judge John Reid.**

■ Magistrate Judge Payson recommended that statements made by Kadem at the removal hearing before Immigration Judge Reid not be suppressed. Defendant's position before Magistrate Judge Payson was that *Miranda* warnings should have been given but, apparently after considering Magistrate Judge Payson's decision, the defendant's position now is not that *Miranda* warnings should have been given but that the statements were coerced because of the nature of the proceedings.

Magistrate Judge Payson covered Kadem's motion to suppress these statements in some detail in the Report and Recommendation. I agree with the findings made and her conclusion that the motion to suppress should be denied.

It is clear that *Miranda* warnings need not be given in these deportation proceedings which are civil in nature. *See United States v. Solano–Godines*, 120 F.3d 957, 960 (9th Cir.1997) ("*Miranda* warnings are not required before questioning in the context of a civil deportation hearing ... because deportation proceedings are not criminal prosecutions, but are civil in nature"). Kadem was placed under oath at the hearings and is charged now with committing perjury on four separate dates as charged in Count 3 through Count 6 of the indictment. In each case, he identified himself as Giovanni Marciano, when in fact that was not his true name.

I agree with Magistrate Judge Payson that the *Miranda* warnings need not have been given, and I also find that the statements were not coerced. Therefore, I reject defendant's arguments concerning statements made at the deportation hearing essentially for the reasons advanced by Magistrate Judge Payson.

### CONCLUSION

I adopt the Report and Recommendation of Magistrate Judge Payson filed March 1, 2004, in part, and modify it in part.

Defendant's motion to suppress statements made to Investigator Yera on January 15 and March 15, 2002 is granted in part and denied in part. The motion is denied as to Kadem's statements relative to basic pedigree information. In all other respects, the motion to suppress is granted. The motion to suppress statements made at the several proceedings before Immigration Law Judge John Reid are in all respects denied. ·

IT IS SO ORDERED.